Argued and submitted December 18, 1992, affirmed March 16, 1994

Bert KORTEWEG,
*Respondent,*

*v.*

Suzanne SHROYER,
*Appellant.*

(15-89-01261; CA A74770)

870 P2d 863

P. Scott McCleery argued the cause for appellant. With him on the brief were Michael W. Doyle and Doyle, Gartland, Nelson & McCleery, P.C.

Mary Lois Wagner argued the cause for respondent. With her on the brief was Shepard & Wagner, P.C.

Before Richardson, Chief Judge, and Deits and Riggs,* Judges.

RIGGS, J.

* Riggs, J., *vice* Durham, J.

### RIGGS, J.

In this child custody modification proceeding the primary issue is whether the court erred in awarding custody to father, where the initial stipulated joint custody agreement and judgment gave mother the right to elect sole custody after two years without showing a substantial change of circumstances.

The parties have one child, born in September, 1988. On March 16, 1990, they entered into a child custody settlement agreement providing that:

"A. The parties shall have joint custody of their son, * * * from the date of this agreement until September 6, 1992, and thereafter, except upon the election to the contrary of Mother, as is set out below.

"'* * * * *

"D. If, on September 6, 1992, Mother has determined that joint custody is not working in the best interests of all, she may elect to be the sole custodial parent. Father consents to this provision and his consent is irrevocable."

The court entered a judgment incorporating this agreement on March 19, 1990.[1] In September, 1991, father filed a petition with the court requesting sole custody and child support. After a hearing, the court awarded father sole custody and ordered mother to pay child support. Mother appeals. We review *de novo*, ORS 19.125(3), and affirm.

■    Mother first argues that the court erred in finding the election provision in the March, 1990 judgment to be unenforceable. She contends that the failure of joint custody should accelerate the election provision, allowing her to elect sole custody, if father does not show changed circumstances. Father argues that the election provision is unenforceable as against public policy, because it deprives the court of its statutory authority to determine the best interests of the child. We need not reach the issue of whether the election

---

[1] The judgment provides:

"1. That the parties shall be awarded joint custody of the minor child from the date the Child Custody Settlement Agreement was signed until September 6, 1992, and thereafter, except upon the election to the contrary of Mother, pursuant to the terms and conditions of the Child Custody Settlement Agreement * * *."

provision is unenforceable, because we find for father on other grounds.[2]

ORS 107.169(5) provides:

"Modification of a joint custody order shall require showing of changed circumstances and a showing that the modification is in the best interests of the child such as would support modification of a sole custody order. Inability or unwillingness to continue to cooperate shall constitute a change of circumstances sufficient to modify a joint custody order."

Mother concedes that either parent's inability or unwillingness to continue joint custody is a change of circumstances sufficient to modify the joint custody portion of the judgment. However, mother argues that this change of circumstances is not sufficient to modify the election provision, and therefore father must demonstrate some other change in circumstances. In the light of ORS 107.169(5), the election provision is subject to the court's modification. Because at the time of the hearing, father, and apparently the trial court, no longer found the joint custody arrangement workable, the court correctly awarded sole custody to one parent, based on its determination of the best interests of the child. *Horner and Horner*, 119 Or App 112, 116, 849 P2d 560 (1993); *Swilling and Swilling*, 97 Or App 384, 386, 775 P2d 929 (1989).

---

[2] In *Jacobson and Jacobson*, 84 Or App 704, 710, 735 P2d 627, *on recon* 87 Or App 434, 742 P2d 691, *rev den* 304 Or 311 (1987), we found a similar automatic change in custody provision unenforceable. In that case, the stipulated dissolution judgment included a provision that custody would change from the mother to the father when the child reached 12 years of age, nearly 10 years after the judgment was entered. The mother could avoid the change in custody only by showing that the change was not in the best interests of the child. The trial court found that the mother did not show that the best interests of the child would be served by modifying the decree, and denied the mother's motion. We said:

"[W]e find no authority in Oregon law for an automatic change of custody provision in a dissolution judgment. Clearly, a dissolution court would lack the power to order an automatic change of custody operative solely on the occurrence of a birthday, the end of a school year or any other such happening. Further, we doubt that a court could ever provide for an automatic change of custody on the happening of any general or specific event. Thus, *we fail to see how the parties' agreement could give the dissolution court the power to do what the court itself could not do*. We hold that the dissolution court lacked power to provide for an automatic change of custody in this case. The language in the judgment that does that is unenforceable." *Jacobson and Jacobson, supra*, 84 Or App at 708. (Emphasis supplied.)

■ Mother next argues that the "effect" of the stipulated custody agreement and judgment was to give her sole custody, and therefore father must prove a substantial change of circumstances, beyond the failure of joint custody, before the court can order a change. She relies on *Gatti and Gatti*, 73 Or App 581, 699 P2d 1151 (1985), where we found that the effect of the trial court's order of "physical custody" to one parent and joint custody to both parents, was an award of sole custody to the parent with "physical custody." In *Gatti*, we said that the modified decree did not "reflect that the parties can or will share equal responsibility and authority in the lives of the children * * *." 73 Or App at 584. In that case, the decree listed one party's home as the "primary residence," and provided for an increase in child support payments. *Gatti* is inapposite. In this case, the initial judgment awarded the parties joint custody, anticipated that the child would divide his time equally between the parties, required no child support payments, and divided the costs of health insurance and expenses equally. Under the circumstances, the election provision did not, "in effect," award mother sole custody.

■ Mother next assigns error to the court's award of sole custody to father arguing that the evidence does not support such a change, and that father previously acknowledged mother's competence as a parent when he agreed to the original custody arrangement. We have said that,

> "where the interest of the child would be well served by awarding custody to either parent, the trial court's ability to see and hear the witnesses becomes particularly important, and we will not disturb the trial court's ruling unless we are convinced that an equitable result has not been reached." *Thompson and Thompson*, 103 Or App 458, 460, 797 P2d 1077 (1990).

Reviewing the record *de novo*, we see no reason to disturb the trial court's award of custody to father.

Mother's remaining assignment of error regarding the award of child support does not merit discussion.

Affirmed.